United States District Court
Southern District of Texas
**ENTERED**
November 25, 2015
David J. Bradley, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
VICTORIA DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
|     Plaintiff/Respondent, | § | |
| | § | |
| v. | § | CRIMINAL NO. 6:14-89 |
| | § | |
| FERNANDO ADAME DELEON, | § | |
|     Defendant/Movant. | § | |

## MEMORANDUM OPINION & ORDER

Defendant Fernando Adame DeLeon is charged with being a felon in possession of two firearms and ammunition, which were discovered in his car following his arrest for felony evading arrest. Pending before the Court is Defendant's motion to suppress evidence of the firearms and ammunition (D.E. 28) and supplemental briefing (D.E. 33, 42), to which the Government has responded (D.E. 29, 41).

**I. Background**

An evidentiary hearing on Defendant's motion was held, during which Victoria Police Department (VPD) Detective Dennis Paine, VPD Officer Justin Garcia, VPD Sergeant Clay Fetters, and VPD Officer Jimmy McDonald testified as follows.

On November 3, 2014, at approximately 11:20 P.M., Detective Paine was on duty when he observed a black Chevrolet Cruze. He recognized the vehicle as belonging to Defendant, who he suspected to be involved in narcotics trafficking based on information from numerous sources. He had been actively looking for the vehicle in order to place a tracking device on it, and he began to follow the vehicle to see where it was going. Detective Paine was in plain clothes and an unmarked VPD vehicle at the time, so he contacted Officer Garcia, who was in a patrol car with lights and sirens, and told him to stay in the area in case he needed assistance

1

stopping the Cruze. As the vehicle approached a red light, Detective Paine observed it pass the designated stop point before coming to a complete stop, in violation of the Texas Transportation Code. Detective Paine then observed the vehicle make a wide right turn, also in violation of the Texas Transportation Code. Detective Paine again contacted Officer Garcia to notify him of the traffic violations and ask for assistance in stopping the vehicle.

Officer Garcia responded to the area and activated his emergency lights to conduct a traffic stop on the Cruze, but the vehicle failed to pull over and continued driving. Officer Garcia and Detective Paine continued to follow the vehicle for approximately three quarters of a mile, until it eventually turned on its hazard lights before turning into the common parking lot of an apartment complex. Officer Garcia ordered the driver to get out of the vehicle and on the ground. The driver of the vehicle, identified as Defendant, was then handcuffed and arrested for evading arrest with a motor vehicle. Several other officers arrived on the scene to assist, including Sergeant Fetters and Officer McDonald.

Upon approaching the vehicle, officers smelled fresh marijuana emanating from the open driver's side door. Detective Paine and Sergeant Fetters also observed an open box containing what appeared to be marijuana residue between the driver's seat and door. Detective Paine, Sergeant Fetters, and other officers on the scene then searched the vehicle, uncovering $9,000 in a plastic bag on the front passenger floorboard, as well as two firearms, ammunition, and more currency in the trunk.

Officers remained at the scene for roughly two hours following Defendant's arrest. During this time, Detective Paine left the scene to obtain a warrant to place a tracking device on Defendant's car. After Detective Paine returned with a signed warrant, a tracking device was

placed on Defendant's car. The vehicle was not impounded, as Defendant had asked that it be left with his friend who resided at the apartment complex.

Defendant now moves to suppress evidence of the firearms and ammunition on the grounds that they were discovered in violation of his Fourth Amendment rights.

## II. Analysis

### A. Was the initial stop lawful?

Under Texas law, a driver required to stop at an intersection must stop before entering the crosswalk on the near side of the intersection, or, in the absence of a crosswalk, the driver must stop at a clearly marked stop line. TEX. TRANS. CODE § 544.010. In addition, to make a right turn at an intersection, the driver must make both the approach and the turn as closely as practicable to the right-hand curb or edge of the roadway. *Id.* § 545.101(a). The Court finds that Detective Paine offered credible testimony that he observed Defendant violate both of these traffic laws, and Officer Garcia reasonably relied on Detective Paine's dispatch when he initiated the traffic stop. Accordingly, the initial stop of Defendant's vehicle was lawful. *See United States v. Ibarra–Sanchez*, 199 F.3d 753, 759 (5th Cir. 1999) (citing *United States v. Hensley*, 469 U.S. 221 (1985)) (Officer who stops a vehicle in reliance on a report from a witnessing officer is not required to have personal knowledge of the evidence that created the witnessing officer's reasonable suspicion if the witnessing officer possessed sufficient reasonable suspicion to stop the vehicle when he made his call.).

### B. Was the search of Defendant's car lawful?

The Fourth Amendment protects against unreasonable search and seizures. U.S. Const. amend IV. "[I]t is a cardinal principle that 'searches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth

Amendment—subject only to a few specifically delineated exceptions.'" *Mincey v. Arizona*, 437 U.S. 385, 390 (1978) (quoting *Katz v. United States*, 389 U.S. 347, 357 (1967)). The Government maintains that, based on Defendant's arrest for a felony evading arrest with a motor vehicle, the officers were permitted to search the vehicle incident to Defendant's arrest, as well as conduct an inventory search. Moreover, the smell of marijuana emanating from the vehicle and sight of marijuana residue inside gave officers probable cause to search the vehicle for evidence of contraband under the automobile exception to the warrant requirement. Defendant argues that none of these exceptions apply here.

### 1. Search Incident to Arrest

"It is well settled that 'in the case of a lawful custodial arrest a full search of the person is not only an exception to the warrant requirement of the Fourth Amendment, but is also a reasonable search under that Amendment.'" *United States v. Finley*, 477 F.3d 250, 259 (5th Cir. 2007) (quoting *United States v. Robinson*, 414 U.S. 218, 235 (1973)). However, police may search a vehicle incident to a recent occupant's arrest only if: (1) the arrestee is within reaching distance of the passenger compartment at the time of the search; or (2) it is reasonable to believe the vehicle contains evidence of the offense of arrest. *Arizona v. Gant*, 556 U.S. 332, 351 (2009) (overruling *New York v. Belton*, 453 U.S. 454 (1981)). "When these justifications are absent, a search of an arrestee's vehicle will be unreasonable unless police obtain a warrant or show that another exception to the warrant requirement applies." *Id*.

The Court finds that neither justification applies in this case. At the time officers searched Defendant's vehicle, he was already under arrest and in handcuffs, and he was not within reaching distance of the vehicle. Further, it was not reasonable to believe the vehicle contained evidence of the offense of arrest, evading arrest.

### 2. Inventory Search

An inventory search is another exception to the warrant requirement. *Colorado v. Bertine*, 479 U.S. 367, 371 (1987); *United States v. Foots*, 340 Fed. App'x 973 (5th Cir. 2009). The Fifth Circuit has held that an inventory search "'is reasonable and not violative of the Fourth Amendment if it is conducted pursuant to standardized regulations and procedures that are consistent with (1) protecting the property of the vehicle's owner, (2) protecting the police against claims or dispute over lost or stolen property, and (3) protecting the police from danger.'" *United States v. McKinnon*, 681 F.3d 203, 209 (5th Cir. 2012) (quoting *United States v. Lage*, 183 F.3d 374, 380 (5th Cir. 1999)). The procedures "must 'sufficiently limit the discretion of law enforcement officers to prevent inventory searches from becoming evidentiary searches.'" *Id.* at 209–10 (quoting *United States v. Andrews*, 22 F.3d 1328, 1336 (5th Cir. 1994)). Law enforcement officers may inspect a car's glove compartment and trunk when conducting inventory searches because personal property is commonly kept there. *United States v. Edwards*, 577 F.2d 883, 894 (5th Cir. 1978) (en banc). "[T]estimony regarding reliance on standardized procedures is sufficient, *see United States v. Como*, 53 F.3d 87, 92 (5th Cir. 1995), as is an officer's unrebutted testimony that he acted in accordance with standard inventory procedures." *Lage*, 183 F.3d at 380 (citing *United States v. Bullock*, 71 F.3d 171, 178 (5th Cir. 1995)).

Defendant argues that there was no need to protect his property because: (1) his vehicle was on private property and properly parked; (2) officers did not intend to impound vehicle, and (3) officers did not actually impound the vehicle. The Court finds that because the vehicle was not impounded, the inventory search exception does not apply here.

### 3. Automobile Exception

"The automobile exception allows police to search a vehicle if they have probable cause to believe that the vehicle contains contraband." *United States v. Fields*, 456 F.3d 519, 523 (5th Cir. 2006) (citing *Maryland v. Dyson*, 527 U.S. 465, 467 (1999)). Courts in this Circuit have routinely held that the smell of marijuana emanating from a vehicle provides probable cause for the search of the vehicle. *See, e.g.*, *United States v. McSween*, 53 F.3d 684, 686 (5th Cir. 1995) ("[T]he smell of marihuana alone may be ground enough for a finding of probable cause, as this Court has held many times."); *United States v. Reed*, 882 F.2d 147, 149 (5th Cir. 1989) ("[T]he distinct odor of burnt marihuana . . . in itself would have justified the subsequent search of Reed's vehicle."); *United States v. Henke*, 775 F.2d 641, 645 (5th Cir. 1985) ("Once the officer smelled the marijuana, he had probable cause to search the vehicle."). Here, officers testified that they smelled fresh marijuana emanating from Defendant's vehicle at the time he was pulled over and saw marijuana in the car.

Defendant argues that, even assuming the officers had probable cause to believe his vehicle contained contraband based on the sight and smell of marijuana, the automobile exception to the warrant requirement applies only where it is impracticable for police to obtain a warrant. According to Defendant, because officers obtained a warrant for a vehicle-tracker for his car immediately following his arrest, it was practicable for them to also obtain a warrant to search the vehicle for illegal contraband at the same time, citing *Carroll v. United* States, 267 U.S. 132, 156 (1925). Under Defendant's reading of *Carroll*, the Supreme Court "held that the automobile exception to the warrant requirement only applies when probable cause exists <u>and</u> securing a warrant is not reasonably practicable." D.E. 42 at 1 (emphasis by Defendant).

6

The Supreme Court's opinion in *United States v. Ross* begins: "In *Carroll v. United States*, 267 U.S. 132, the Court held that a warrantless search of an automobile stopped by police officers who had probable cause to believe the vehicle contained contraband was not unreasonable within the meaning of the Fourth Amendment." *United States v. Ross*, 456 U.S. 798, 799 (1982). The *Ross* opinion thereafter conducts a thorough review of *Carroll* and its progeny, recognizing:

> Thus, since its earliest days Congress had recognized the impracticability of securing a warrant in cases involving the transportation of contraband goods. It is this impracticability, viewed in historical perspective, that provided the basis for the *Carroll* decision. Given the nature of an automobile in transit, the Court recognized that an immediate intrusion is necessary if police officers are to secure the illicit substance. In this class of cases, the Court held that a warrantless search of an automobile is not unreasonable.
>
> In defining the nature of this "exception" to the general rule that "[i]n cases where the securing of a warrant is reasonably practicable, it must be used," the Court in *Carroll* emphasized the importance of the requirement that officers have probable cause to believe that the vehicle contains contraband.
>
> \* \* \*
>
> In short, the exception to the warrant requirement established in *Carroll*—the scope of which we consider in this case—applies only to searches of vehicles that are supported by probable cause. In this class of cases, a search is not unreasonable if based on facts that would justify the issuance of a warrant, even though a warrant has not actually been obtained.

*Id.* at 806–09 (internal citations and footnotes omitted).

The Government argues that Defendant's reference to the "reasonable practicability" standard "is taken out of context and is not supported by the current authority within the Fifth Circuit." D.E. 41 at 1. Based on the Supreme Court's more recent opinion in *Ross*, as well as current Fifth Circuit authority, the Court agrees. The Court further finds the Fifth Circuit's opinions in *United States v. Sinisterra*, 77 F.3d 101 (5th Cir. 1996), and *United States v. Fields*, 456 F.3d 519 (5th Cir. 2006), to be instructive, despite the somewhat unusual facts of this case.

7

In *Sinisterra*, federal agents had been conducting surveillance on a house based on information that the house was used for drug-related activities. *Sinisterra*, 77 F.3d at 102. Agents followed Sinisterra from the home to a shopping mall parking lot, where he parked his van before venturing off on a series of suspicious errands. *Id.* Houston police officers walked a narcotics-detecting dog around the van, and the dog alerted to the van. *Id.* After observing two large duffle bags through the van's window, two officers left to obtain a search warrant. *Id.* at 103. The van was still parked at the mall several hours later. *Id.* At that time, a U.S. Customs Agent looked through the windows of the van with a flashlight and saw several kilogram-size, cellophane-wrapped packages he believed to contain narcotics based on a logo on one of the packages. *Id.* When an assistant U.S. Attorney learned of this discovery, he advised the officers who were in the process of getting a warrant that a warrant was unnecessary, and all efforts to obtain a warrant ceased. *Id.* The van was then towed to the Houston police department, where a warrantless search revealed approximately 200 kilograms of cocaine. *Id.* The district court granted Sinisterra's motion to suppress the cocaine on the grounds "that the search was not justified by exigent circumstances because the police had a valid basis to seize the vehicle and, thus, could have obtained a warrant at their leisure" and "further reasoned that the automobile exception to the warrant requirement did not apply because the van was parked in a privately owned parking lot." *Id.* at 103–04. The Fifth Circuit reversed, holding as follows:

> Because the officers had probable cause to believe that the van—which was in operational condition and was parked in the mall parking lot which was open to the public (at least those shopping at the mall) though not publicly owned—contained narcotics, they were legally authorized to search it without a warrant, even if the circumstances were not exigent. The district court hence erred in granting the motion to suppress.

*Id.* at 105.

In *Fields*, narcotics officers were conducting surveillance of a duplex in Fort Worth after receiving information that Fields was selling narcotics out of the building. *Fields*, 456 F.3d at 520–21. After observing what they believed to be several drug transactions, they saw Fields place a black bag, electronic device, and cooler in an Impala that was parked in the driveway of the duplex and drive away. *Id.* at 521. Officers radioed a third officer who was in a marked police car and instructed the officer to follow Fields and pull him over if he committed a traffic violation. *Id.* That officer saw Fields run a stop sign and activated his overhead lights to pull Fields over. *Id.* Instead of stopping, Fields accelerated and drove across two vacant lots at a high rate of speed, lost control of the car, and ran the Impala into the side of the same duplex that he had just left. *Id.* Fields then exited the Impala and ran on foot. *Id.* One officer opened the Impala's passenger door to see if anyone else was in the car. *Id.* A few minutes later, he opened the passenger door again and saw a black bag that was open and contained narcotics. *Id.* At the same time, two other officers chased Fields for several blocks before arresting, handcuffing, and placing him in the back of a patrol car, then returning him to the scene. *Id.* Fields remained in the squad car about 30 feet away from the Impala while crime scene officers photographed and searched the car. *Id.* In addition to the black bag with narcotics, they found narcotics in the cooler and a handgun in the front passenger seat. *Id.* Meanwhile, another officer obtained a search warrant to search the duplex. *Id.* The district court denied Fields' motion to suppress, finding that "once the drugs fell out of the vehicle, there was a basis, a constitutional basis, for searching the vehicle at that time because it was apparent that contraband was in the vehicle." *Id.* at 522. The Fifth Circuit affirmed, holding that officers had probable cause to believe the vehicle contained contraband at the time of the search at issue, and "the automobile exception applies because Fields did not regularly use the duplex for residential purposes." *Id.* at 523, 525.

Here, as in *Sinisterra* and *Fields*, officers had probable cause to search Defendant's vehicle based on their direct observations of narcotics inside the vehicle. Moreover, none of the vehicles in question was parked on a public roadway, but instead on private property that was not the defendant's residence. Finally, it was practicable for officers to have secured a warrant in all three cases, as officers were in the process of getting a warrant in *Sinisterra* before they were called back, and officers did get a separate warrant to search the duplex in *Fields*. Based on the Fifth Circuit's decisions in *Sinisterra* and *Fields*, the Court finds that officers had probable cause to search Defendant's vehicle, the automobile exception to the warrant requirement applied, and the warrantless search of Defendant's vehicle did not violate the Fourth Amendment.

**III. Conclusion**

For the reasons set forth above, Defendant's Motion to Suppress Evidence (D.E. 28) is **DENIED**.

It is so **ORDERED**.

**SIGNED** this 24th day of November, 2015.

_____
JOHN D. RAINEY
SENIOR U.S. DISTRICT JUDGE